BOWEN et al., Plaintiffs in Error, v. McKEAN et al.

**Husband and Wife**: LAND, PURCHASE OF IN PART WITH WIFE'S MONEY: TRUST. A husband received from his wife money arising from the sale of her real estate, under an agreement to invest it in land in her name. He purchased land, paying for it in part with her money and in part with his own and took the title in his own name; Held, that the wife was entitled to have in her own right, exempt from subjection to the husband's debts, such portion of the land as the amount of her money paid thereon bore to the whole sum paid.

*Error to Cass Circuit Court.*—Trial before HON. F. M. BLACK, Judge of the Twenty-fourth Judicial Circuit.

AFFIRMED.

C. W. Sloan, R. T. Railey and Boggess & Moore for plaintiffs in error.

No one can, by paying a part of the consideration and purchase price of real estate, become a joint tenant in the ownership thereof or of a right therein, to any definite or defined extent, without having furnished and paid some aliquot part of the purchase price, with the distinct understanding or agreement that for the money so furnished and paid, some aliquot part, or proportion, or some defined interest or estate should thereby be acquired by the person so furnishing such money. *Bresnehan v. Sheehan,* 125 Mass. 11, 13; *McGowan v. McGowan,* 14 Gray 119, 121, and authorities; *Buck v. Warren,* 14 Gray 122; *Snow v. Paine,* 114 Mass. 520, 526; *Olcott v. Bynum,* 17 Wall. 44, 59; *Cuttle v. Tuttle,* 19 N. J. Eq. 561, 562; *Baker v. Vining,* 30 Me. 121. The conveyance to Thomas McKean was without consideration, and he being insolvent at the time, it is fraudulent and void. R. S., § 2497; *Woodson v. Pool,* 19 Mo. 340; *Potter v. McDowell,* 31 Mo. 62; *Powley v. Vogel,* 42 Mo. 291. The answer of Thomas and Thompson McKean did not tender any issue, as it denied only the material allegations of the petition. *Long v. Long,* 79 Mo. 644.

Eliza McKean having failed to testify in her own behalf, when all the alleged facts on which she predicated her claim were peculiarly within her personal knowledge, the evidence must be construed strongly against her. *Baldwin v. Whitcomb*, 71 Mo. 651; *Mabery v. McClurg*, 74 Mo. 575.

*Comingo & Slover* with *John T. Lawdor* for defendants in error.

Defendant, Eliza McKean, furnished $840 of the money with which the land in controversy was bought, and her husband furnished the balance. He having received the $840 from her, with an agreement at the time of doing so, that he would invest it for her, the fact that he advanced a part of the purchase money for said land, and took the title thereto in his own name, does not deprive her of her equitable interest therein. She was entitled to her proportionate part of the property thus purchased, and paid for, with her money. *Thompson v. Reno*, 12 Mo. 157; *Sloan v. Torry*, 78 Mo. 623; *Bumgartner v. Guessfeld*, 38 Mo. 41, and citations; *Thorp v. Thorp*, 3 Met. (Ky.) 272; *Lyon v. Akin*, 78 N. C. 258; *Rhea v. Tucker*, 56 Ala. 450; *Botsford v. Burr*, 2 Johns. Ch. 405; *Tibbetts v. Tilton*, 31 N. H. (11 Foster) 282, 283, and citations; *Hall v. Young*, 37 N. H. 147, 148, and citations; *Sheldon v. Sheldon*, 3 Wis. 703, 704; 2 Bishop's Law of Married Women, §§ 125, 126.

EWING, C.—Plaintiffs commenced suit in Cass county, alleging substantially that they were husband and wife, and that on the 24th day of November, 1880, they obtained judgment for $18,320 against the defendant Thomas McKean. That then and now said Thomas McKean was largely in debt and insolvent; that on August 3rd, 1875, he was the legal owner of the northwest quarter of the northeast quarter and the east half of the northeast quarter in section 22; also the northwest quarter of the northwest quarter of section 23; and, also, the northwest quar-

ter of the northeast quarter of section 13, all in township 44, range 33, in Cass county, Missouri. That afterwards said Thomas McKean and his wife, Eliza, conveyed said real estate to the other defendant, Thompson McKean, without consideration, for the purpose of defrauding the creditors of the said Thomas. That afterwards, January 26th, 1881, execution on the judgment aforesaid was sued out, levied on said land and sold, and Elizabeth S. Bowen, one of the plaintiffs, became the purchaser, and received a deed from the sheriff. And pray to have the deed to Thompson McKean declared void and fraudulent, and the title vested in plaintiff.

Eliza McKean, upon application, was made party defendant, and for her separate answer said in 1854 she received from her mother's estate $100, with which she afterwards entered eighty acres of land in Iowa, subsequently sold the Iowa land for $800, and got thereon $40 interest; That that sale was made with the express understanding between her and her husband, that the proceeds should be invested in land in Missouri, and the title taken in her name. That in pursuance of such agreement, her husband bought the land mentioned in the petition, putting her money in it and a part of his own; but took the deed in his own name. That afterwards she joined with her husband in conveying it to the defendant, Thompson, her son, for the sole purpose of protecting her interest in the land; and asked the court to decree to her, her proportional interest in the land. This the court below did, and the plaintiff brings the case here by writ of error.

To sustain the issues on the part of plaintiffs, they read the note and $18,000 judgment, deed from sheriff to Elizabeth S. Bowen, deed from Thomas and Eliza McKean to Thompson McKean, and a deed to Thomas McKean for the land; and various other conveyances of other real estate, and mortgages made by Thompson McKean to borrow money to pay debts of Thomas McKean, and debts for "running" the farm, tending to show that Thomas Mc-

Kean was the owner of the whole, and that it was put in Thompson's name to cover it up from Thomas' creditors. Evidence was, also, introduced tending to show that at the date of the sale to Thompson McKean, there were no deeds on record in Cass county showing that Thomas McKean held the legal recorded title to any real estate whatever.

Defendants then offered evidence tending to show Eliza McKean's entry and sale of the Iowa land for $800, that she sold her interest in her mother's estate for $100, and invested it in the eighty acres bought from the United States, and then introduced Thomas McKean as a witness, who testified positively as to the agreement with his wife; that he did receive the $800 from her and invested it, with some of his own, in the land, and took the deed in his own name; that he and his wife conveyed the land to one Morris, the wife's brother, who re-conveyed to him, Thomas, which deed was not put on record, and that they conveyed to this son, Thompson McKean, so as to secure the wife's interest, but did not then explain to Thompson the object of the conveyance to him. This witness was subjected to a long and searching cross-examination, and it must be confessed that he did not make the transaction as satisfactory as it might have been. But this evidence was not controverted, except by circumstances arising principally from various tax receipts and assessments, and deeds and mortgages offered in evidence in rebuttal by the plaintiffs.

The case was tried by the court, who had the main witnesses before him on the witness stand, subjected to a searching cross-examination, where he could observe their demeanor and manner of testifying; and with the whole case before him, came to a conclusion. That conclusion was to the effect that the deed to Thompson McKean was voluntary and in fraud of the creditors as far as Thomas McKean was concerned; but that the wife, Eliza McKean, had an interest therein, derived from means of her own, which came from her mother's estate, and to which she was entitled in her separate right. Under the facts in this

case, it is clear that Eliza McKean would be entitled in her own right to have such portion of the land as the amount of her money paid thereon may bear to the whole sum paid. "Lands conveyed to one, but purchased with funds advanced for the purpose by another, are held by the grantee in trust for the latter." *Buck v. Swazey*, 35 Mo. 41; *Bumgartner v. Guessfeld*, 38 Mo. 37. In *Baker v. Vining*, 30 Me. 121, it is said: "If two or more persons pay the purchase money for land, and it clearly appear how much each paid, a trust estate would arise to each, respectively, *pro tanto*." The same doctrine is recognized in *Thompson v. Renoe*, 12 Mo. 157; *Lyon v. Akin*, 78 N. C. 258; *Rhea v. Tucker*, 56 Ala. 450; *Botsford v. Burr*, 2 Johns. Ch. 405; *Tebbetts v. Tilton*, 31 N. H. 282, and *Pembroke v. Allenstown*, 1 Foster 107, where it is said that: "If only a part of the purchase money is paid by a third party, there will be a resulting trust in his favor *pro tanto*." *Sheldon v. Sheldon*, 3 Wis. 703.

In the case at bar the evidence tends to show that the wife had $840, arising from the sale of her real estate, which she gave to her husband with the agreement that he should invest it in land in Missouri in her name. He bought the land but took the title in his own name. Under this state of facts there can be no doubt about the law. The court below having found these facts, this court is not called upon to weigh the evidence very nicely, but will assume the facts to be as found below.

The judgment of the court below is, therefore, affirmed. All concur.